# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **KENNETH R. FOX,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 10-553 (RMC)** |
| | ) | |
| **HILARY R. CLINTON,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Kenneth R. Fox wants the Department of State to recognize what he claims to be acts of expatriation under 8 U.S.C. § 1481, the statute governing the procedure for relinquishing one's citizenship, dated as of 2002, the year in which he became a citizen of Israel. Mr. Fox insists that he has relinquished his citizenship by two expatriating acts under § 1481: (1) obtaining naturalization in a foreign state by application, *see* 8 U.S.C. § 1481(a)(1); and (2) taking an oath or formal declaration of allegiance to a foreign state, *see* 8 U.S.C. § 1481(a)(2). The Department of State finds the proffered evidence of such acts lacking, but suggests an alternative course under § 1481 that would suffice: make a formal renunciation of nationality before a diplomatic or consular officer of the United States at the U.S. embassy in Tel Aviv, *see* 8 U.S.C. § 1481(a)(5). For some reason, Mr. Fox is unwilling to take this route to expatriation and, instead, has retained counsel and sued Hilary R. Clinton, Secretary of State, and Edward Betancourt, Director of the Office of Policy Review and Interagency Liaison, demanding that they recognize the validity of his stated acts of expatriation. Defendants have filed a motion to dismiss for failure to state a claim. Mr. Fox most gracefully opposes, but does not explain why he doesn't just go to Tel Aviv and make a formal renunciation

of nationality.  The motion to dismiss will be granted and the Court will remain mystified.

## I. FACTS

Kenneth Fox is a United States citizen by birth.  Compl. [Dkt. # 1] ¶ 1.  He now lives in Israel and has acquired Israeli citizenship.  *Id*.  He states that he became a citizen of Israel in 2002, by filing an Application for Permit of Permanent Residence in Israel, which he states "constituted an application to be naturalized as an Israeli citizen" under Israeli law.  *Id*. ¶ 10.

On July 8, 2009, Mr. Fox, through counsel, wrote to the Bureau of Consular Affairs in Washington, D.C., and requested a Certificate of Loss of Nationality.  *Id*. ¶ 15.  Accompanying the request was an affidavit signed by Mr. Fox on July 7, 2009, in which he stated that "in 2002 I renounced my United States citizenship, due to my becoming an Israeli citizen and my intent of renunciation at that time."  *Id*., Attach. 1, Ex. A, p. 4 (Affidavit of Renunciation of United States Citizenship).  He added, "Finally, I would like to affirm that it has been my express intent to renounce my citizenship in 2002 coupled with the act of either becoming a citizen of another country, taking another country's oath, or a combination of the two."  *Id.*  On July 21, 2009, Kim Richter, am employee within the Department of State responded to Plaintiff's counsel by email: "You sent the Department of State a letter for Kenneth Richard Fox renouncing his citizenship.  Mr. Fox needs to go to the U.S. Embassy in Tel Aviv to formally renounce his citizenship.  You cannot do it for him."  *Id*., Attach. 1, Ex. B.  Counsel for Mr. Fox replied that he knew that he could achieve renunciation by going to Tel Aviv but Mr. Fox "wishes to legally invoke his renunciation (or past act of renunciation) through obtaining naturalization in a foreign state and/or taking an oath, affirmation or other formal declaration to a foreign state or its political subdivisions."  *Id*., Attach. 1, Ex. C (citations omitted).

On August 5, 2009, after checking with the lawyers at the Department of State, Ms. Richter wrote again to Mr. Fox's counsel by email:

> Mr. Fox acquired Israeli citizenship pursuant to the Law of Return.[1]  In a sense, he can be viewed as a dual national since birth who in 2002 simply took advantage of a status that he always had.  He did not apply for naturalization so as to place him within the purview of [8 U.S.C. § 1481](a)(1).  Furthermore, any expression of allegiance to Israel would not be viewed as meaningful given the fact that he has in effect had a claim to Israeli citizenship from the get go and therefore always owed a certain degree of allegiance to that state.  If he chooses, he may formally renounce his citizenship before a U.S. consular officer.

*Id.*, Attach. 1, Ex. D.

Unhappy with this result, Mr. Fox retained counsel in the United States, who wrote to Defendant Edward Betancourt on September 8, 2009, inquiring about the procedure for appealing Ms. Richter's decision.  *Id.*, Attach. 1, Ex. G.  Mr. Betancourt answered on September 29, 2009:

> From the information provided to us, it is our understanding that Mr. Fox became an Israeli citizen on January 30, 2002, in accordance with the Israeli Law of Return.  With respect to acquisition of Israeli nationality pursuant to this law, the Israeli Foreign Ministry in an information sheet dated August 4, 1998, notes that "Israeli citizenship becomes effective on the day of arrival in country or of receipt of an *oleh's* certificate, whichever is later.  A person may declare within three months, that he/she does not wish to become a citizen . . . ."
>
> Section 349(a)(1) requires the U.S. citizen to naturalize as a citizen of a foreign state "**upon his own application**." (Our emphasis)  An individual whose citizenship is automatically conferred upon him, as was the case of Mr. Fox, has not committed a statutory act of expatriation . . . .  [T]he underlying act is not one that the law recognizes as being expatriating.

*Id.*, Attach. 1, Ex. H (emphasis in original).  Noting the absence of evidence that Mr. Fox had taken

---

[1]  Section 3 of the Law of Return grants every Jewish individual the right to come to Israel as an "*oleh*" (a Jew immigrating to Israel) and become an Israeli citizen.  Compl. ¶ 28; *see also* Israeli Citizenship Law of 1952, § 2(b)(4).  *See id.*, Attach. 1, Ex. E.

an oath of allegiance to a foreign state, Mr. Betancourt indicated a willingness to review such evidence. *Id.*

When Mr. Fox, through counsel, next wrote to Mr. Betancourt, he explained that the Israeli "Application for permit of permanent residence in Israel/change of visa category . . . becomes an application for citizenship under the Law of Return when the first box (Certificate of 'oleh') is checked. An 'oleh' becomes a citizen upon issuance of the certificate." *Id.*, Attach. 1, Ex. M1, pp. 1–2 n.1. He insisted that "[t]here is nothing automatic about consideration of the application" and, in fact, Mr. Fox was initially denied citizenship in Israel. *Id.*, p. 2. Mr. Fox explicitly denied reliance on Section 5 of the Israeli Nationality Law of 1952, which provides for acquiring citizenship through naturalization. *Id.* While arguing that he had submitted the necessary "application" for Israeli citizenship, Mr. Fox also noted that the "Israeli Ministry of the Interior is legally required to accept adult candidates for citizenship who satisfy Israeli tests for Jewish identity and who are otherwise acceptable for naturalization." *Id.* His application for a permit of permanent residence, he contended, satisfied § 1481(a)(1). *Id.*, p. 4.

Mr. Fox further argued that he had declared his allegiance to Israel by the same declaration preceding naturalization under the Israeli Nationality Law of 1952, *i.e.*, "I declare that I will be a loyal national of the State of Israel." *Id.*, p. 4.

Mr. Betancourt responded on December 4, 2009, asking for: (1) "[a] certified copy of the application for Israeli citizenship that [Mr.] Fox submitted on October 25, 2001;" (2) "[a] certified copy of Mr. Fox's citizenship certificate," translated if in Hebrew; and (3) "[c]ertified copies of all the pages" of Mr. Fox's U.S. passport. *Id.*, Attach. 1, Ex. O. Through counsel, Mr. Fox answered on December 15, 2009, submitting a copy of the first page of the application form, his

national Israeli identification card, the first pages of Mr. Fox's Israeli passport, and a copy of Mr. Fox's U.S. passport. *Id.*, Attach. 1, Ex. P.

Mr. Betancourt was not persuaded. He wrote back on January 21, 2010:

In order to establish loss of citizenship pursuant to [8 U.S.C. § 1481(a)(1)] of the Immigration and Nationality Act ("INA"), the burden rests in this case upon Mr. Fox to establish by the preponderance of the evidence that he naturalized as an Israeli citizen "upon his own application." The document that you enclosed in your most recent letter is entitled "Application for Permanent Residence In Israel." On its face, this is not an application for naturalization.

*Id.*, Attach. 1, Ex. Q. Mr. Betancourt asked for "a certified copy of the signed oath of allegiance to the state of Israel that Mr. Fox is alleged to have taken" in order to determine whether he established an expatriating act under § 1481(a)(2), and "a certified copy and certified translation of Mr. Fox's Israeli certificate of citizenship." *Id.* Counsel for Mr. Fox responded on February 22, 2010. *Id.*, Attach. 1, Ex. R. He argued that the title of the application was legally irrelevant and that 'the understanding of the parties was that the direct consequence of this application would be Mr. Fox's naturalization in Israel." *Id.*, p. 1. He also reported that Mr. Fox took an oral oath, as Mr. Fox attested by affidavit, which is "the only documentation possible under the circumstances." *Id.*

Mr. Betancourt responded for the last time on March 8, 2010. *Id.*, Attach. 1, Ex. S. He noted that the evidence only showed that Mr. Fox applied for permanent residence in Israel and the "statute is unambiguous in requiring the U.S. citizen to apply for naturalization" in order to fall under § 1481(a)(1). *Id.* Agreeing that an oath of allegiance does not have to be in writing, Mr. Betancourt indicated that the Department of State "require[s] evidence that is both objective and independent that a meaningful oath of allegiance has been taken." *Id.* Since Mr. Fox's citizenship was achieved under the Law of Return, there was no requirement that he swear an oath. *Id.* Thus,

his oath did not constitute an expatriating act under § 1481(a)(2). *Id.* Mr. Betancourt again advised

Mr. Fox that to achieve his goal of expatriation, he could execute an oath of renunciation before a

U.S. consular officer. *Id*.

Instead of heeding this advice, Mr. Fox filed this lawsuit on April 5, 2010. Based

upon alleged violations of §§ 1481(a) and (b), Mr. Fox seeks declaratory and mandamus relief

requiring the Department of State to recognize his expatriating acts and thereby issue him a

Certificate of Loss of Nationality. Mr. Fox also alleged denial of his rights to due process and equal

protection under the Fifth and Fourteenth Amendments through a *Bivens*[2] claim, but has since

withdrawn this claim. *See* Pl.'s Mem. in Opp'n to Mot. to Dismiss [Dkt. # 12] at 21-22.

## II. LEGAL STANDARDS

### A. Jurisdiction under the Administrative Procedure Act ("APA")

Even though the APA does not provide an independent basis for subject matter

jurisdiction, *Califano v. Sanders*, 430 U.S. 99, 107 (1977), final agency action is subject to judicial

review when there is no other adequate remedy. 5 U.S.C. § 704; *see City of Chicago v. Int'l College

of Surgeons*, 522 U.S. 156, 183 (JJ. Ginsburg & Stevens, dissenting) (under *Sanders*, district courts

may review administrative action under the federal question jurisdiction statute, 28 U.S.C. § 1331,

when Congress has not specifically prescribed another review route or precluded review). "Agency

action made reviewable by statute and final agency action for which there is no other adequate

remedy in a court are subject to judicial review." *Oljato Chapter of Navajo Tribe v. Train*, 515 F.2d

---

[2] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388
(1971) (recognizing federal constitutional claim against the United States).

654, 663 (D.C. Cir. 1975) (citing 5 U.S.C.§ 704).[3]

## B. Review of Agency Action under the APA

The APA requires a reviewing court to set aside an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Tourus Records, Inc. v. Drug Enforcement Admin.*, 259 F.3d 731, 736 (D.C. Cir. 2001). In making this inquiry, the reviewing court "must consider whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 378 (1989) (internal quotation marks and citation omitted). At a minimum, the agency must have considered relevant data and articulated an explanation establishing a "rational connection between the facts found and the choice made." *Bowen v. Am. Hosp. Ass'n*, 476 U.S. 610, 626 (1986); *see also Pub. Citizen, Inc. v. Fed. Aviation Admin.*, 988 F.2d 186, 197 (D.C. Cir. 1993) ("The requirement that agency action not be arbitrary or capricious includes a requirement that the agency adequately explain its result."). An agency action usually is arbitrary or capricious if:

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

---

[3] The APA provides a cause of action to a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action." 5 U.S.C. § 702. Review under the APA is limited to "final agency action" for which there is no other adequate remedy in a court. *Id.* § 704; *Heckler v. Chaney*, 470 U.S. 821, 828 (1985) (a person adversely affected by final agency action is entitled to judicial review so long as no statute precludes review and the action is not committed to agency discretion by law). "Whether there has been 'agency action' or 'final agency action' within the meaning of the APA are threshold questions; if these requirements are not met, the action is not reviewable." *Fund for Animals, Inc. v. Bureau of Land Mgmt.*, 460 F.3d 13, 18 (D.C. Cir. 2006).

*Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see also County of Los Angeles v. Shalala*, 192 F.3d 1005, 1021 (D.C. Cir. 1999) ("Where the agency has failed to provide a reasoned explanation, or where the record belies the agency's conclusion, [the court] must undo its action.").

As the Supreme Court has explained, "the scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43; *see Henley v. FDA*, 77 F.3d 616, 621 (2d Cir. 1996) ("we might not have chosen the [agency's] course had it been ours to chart . . . [b]ut that is hardly the point."). Rather, the agency action under review is "entitled to a presumption of regularity" and the court must consider only whether the agency decision was based on relevant factors and whether there has been a clear error of judgment. *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

## C. Motion to Dismiss Standard

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim. Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). A complaint must be sufficient "to give a defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Although a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." *Id.* The facts alleged "must be enough to raise a right to relief above the speculative level." *Id.* Rule 8(a) requires an actual showing and not just a blanket assertion of a right to relief. *Id.* at 555 n.3. "[A] complaint needs *some* information about the circumstances giving rise to the claims." *Aktieselskabet Af 21. Nov. 2001 v. Fame Jeans, Inc.*, 525 F.3d 8, 16 n.4 (D.C. Cir. 2008) (emphasis in original).

In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 570. When a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, then the claim has facial plausibility. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

A court must treat the complaint's factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555. But a court need not accept as true legal conclusions set forth in a complaint. *Iqbal*, 129 S. Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

### D. Loss of Nationality under 8 U.S.C. § 1481

Under 8 U.S.C. § 1481, there are seven voluntary actions by an American citizen that will result in the loss of United States citizenship, but only three are pertinent in this litigation:

> (1) obtaining naturalization in a foreign state upon his own application or upon an application filed by a duly authorized agent, after having attained the age of eighteen years; or
>
> (2) taking an oath or making an affirmation or other formal declaration of allegiance to a foreign state or a political subdivision thereof, after having attained the age of eighteen years; or
> . . .
>
> (5) making a formal renunciation of nationality before a diplomatic or consular officer of the United States in a foreign state, in such form as may be prescribed by the Secretary of State[.]

8 U.S.C. § 1481(a). Mr. Fox alleges acts of expatriation under sections (1) and (2). The Department of State suggests section (5) as an alternative route.

### III. ANALYSIS

Jurisdiction in this case exists under the APA. Mr. Fox sought an administrative appeal of Mr. Betancourt's decision, to which Mr. Betancourt responded that the Board of Appellate Review had been eliminated, thereby making his office the final review authority for this agency decision. Compl., Attach. 1, Ex. L. The Department of State, through Mr. Betancourt, made a final agency decision in this case: based upon the evidence Mr. Fox was willing to provide, he had not established sufficient proof of acts of expatriation under 8 U.S.C. § 1481(a)(1) or (2). *See* Compl., Attach. 1, Ex. S. As a result, the Department of State refused to issue a Certificate of Loss of Nationality to Mr. Fox. *Id*. This being a "final agency action for which there is no other adequate remedy in a court," *see Oljato Chapter of Navajo Tribe*, 515 F.2d at 663, it is thus reviewable by the

Court under the APA.

Under the APA, a reviewing court may only set aside an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Tourus Records, Inc.*, 259 F.3d at 736. The decision of the Department of State in this case denied Mr. Fox's petition for expatriation under §§ 1481(a)(1) and (2). The burden of proof to establish that he engaged in such expatriating acts "shall be on the person or party claiming that such loss [of citizenship] occurred . . . by a preponderance of the evidence." 8 U.S.C. § 1481(b). Therefore, the agency's decision, and whether such a decision was arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law, is viewed through the lens of whether Mr. Fox established his expatriating acts to the agency by a preponderance of the evidence.

### A. 8 U.S.C. § 1481(a)(1)

The Department of State denied Petitioner's request for recognition of his expatriation under § 1481(a)(1) because Mr. Fox failed to "demonstrate that he has naturalized as a citizen of a foreign state 'upon his own application . . . .'" *See* Compl., Attach. 1, Ex. S (citing 8 U.S.C. § 1481(a)(1)). An action of expatriation will be demonstrated under § 1481(a)(1) when an individual "obtain[s] naturalization in a foreign state upon his own application or upon an application filed by a duly authorized agent, after having attained the age of eighteen years." 8 U.S.C. § 1481(a)(1).

Paragraph 1 of the Israeli Citizenship Law of 1952 sets forth several ways in which Israeli nationality is acquired: (1) by return (paragraph 2); (2) by residence in Israel (paragraph 3); (3) by birth (paragraph 4); or (4) by naturalization (paragraphs 5 to 9). *See* Compl., Attach. 1, Ex. R. Mr. Fox acquired Israeli citizenship "by return," per paragraph 2 of the Israeli Citizenship Law of 1952, *i.e.* receipt of an *'oleh's* certificate under section 3 of the Law of Return. *Id.*, Attach. 1, Ex.

J (Mr. Fox's Israeli Citizenship Certificate). Therefore, he did not acquire citizenship through paragraphs 5 through 9 of the Israeli Citizenship Law of 1952, *i.e.* through naturalization. Indeed, Mr. Fox does not claim that he was naturalized under paragraph 5 through 9 of the Israeli Citizenship Law of 1952. *See id.*, Attach. 1, Ex. M1, p. 2.

Mr. Fox instead argues that, despite not acquiring citizenship through the naturalization section of the Israeli Citizenship Law of 1952, he nevertheless satisfies § 1481(a)(1) because (1) he was "naturalized" in a broader sense of the word, *i.e.* one who was not a citizen of Israel and then becomes a citizen of Israel is "naturalized," no matter the procedural way in which it is done, or the name of that procedure; and (2) he was required to do so upon "application," which is a requirement under Section 3 of the Law of Return.[4] The Department of State reads "naturalization" literally, and notes that one cannot be naturalized if one already has dormant citizenship in a country, such as Mr. Fox who, as a Jewish person, has under the Law of Return in Israel. Furthermore, the distinction set forth in the Israeli Citizenship Law of 1952 between different means of acquiring citizenship cannot be ignored, when naturalization is only one method, to the exclusion of the other methods, including the Law of Return. The Court cannot fault the Department of State's decision because it directly tracks the language of the statute. Mr. Fox cannot establish that he acquired citizenship through naturalization because he did not apply under the naturalization section — he applied under the Law of Return section, which is an altogether independent and

---

[4] One may become a citizen of Israel under the Law of Return upon entry into the country on an *'oleh* visa, or by application sometime later when entering on a tourist visa. *See* Compl., Attach. 1, Ex. M1, pp. 2–3. Mr. Fox entered Israel under a tourist visa, and thereafter applied for citizenship under paragraph 2 of the Israeli Citizenship Law of 1952. *Id.* In doing so, he was not conferred automatic citizenship status, but rather, was required under Section 3 of the Law of Return to *apply* for Permanent Residence in Israel. *Id.* Nevertheless, this application was done under the Law of Return (paragraph 2), rather than under Naturalization (paragraphs 5–9).

separate avenue for a person of Jewish descent to acquire Israeli citizenship. Israel recognizes the right of Jewish people to engage their right of citizenship through a process different from naturalization. As a result, the Department of State's determination that Mr. Fox failed to prove he committed an expatriating act under § 1481(a)(1) was not arbitrary, capricious, an abuse of discretion, or otherwise unlawful.

## B. 8 U.S.C. § 1481(a)(2)

The Department of State also denied Mr. Fox's request for expatriation under § 1481(a)(2) because Mr. Fox failed to provide "objective and independent" evidence that a meaningful oath had been taken. *See* Compl., Attach. 1, Ex. S. An act of expatriation will be demonstrated under §1481(a)(2) when an individual "tak[es] an oath or mak[es] an affirmation or other formal declaration of allegiance to a foreign state or a political subdivision thereof, after having attained the age of eighteen years." 8 U.S.C. § 1481(a)(2). Mr. Fox claims by affidavit that he has taken such an oath, though he concedes that the oath was not one required under Israeli law under the Law of Return. *See* Compl., Attach. 1, Ex. M1, p. 4. In recognizing this limitation, Mr. Fox suggests "where there is no set form of words, the expatriating citizen should be able to choose them; where there is no government-sponsored ceremony in which to swear allegiance, a private averral should be allowed to suffice." Pl.'s Mem. in Opp'n to Defs.' Mot. to Dismiss [Dkt. # 12] at 17.

The Department of State counters that only "formal" oaths will be recognized as meaningful actions under § 1481(a)(2). While paragraph 5 of the Israeli Citizenship Law of 1952, *i.e.* acquiring citizenship through naturalization, requires such a formal oath, paragraph 2, under which Mr. Fox became a citizen, requires no such oath. *See* Compl., Attach. 1, Ex. S. Therefore, Mr. Fox's personal oath, affirmation, or declaration of allegiance was not a meaningful act

under § 1481(a)(2) because it was not a "formal" oath required by the state of Israel to become a citizen under the Law of Return.

The Court cannot find that the Department of State's decision that Mr. Fox failed to prove he committed an expatriating act under § 1481(a)(2) to be arbitrary, capricious, an abuse of discretion, or otherwise unlawful. Mr. Fox chose to acquire citizenship through a means that did not require a "formal" oath, therefore he cannot establish an expatriating act by taking a personal oath, without state involvement. Notwithstanding Mr. Fox's personal oath of allegiance to the State of Israel, the statute requires more.

## IV. CONCLUSION

Because the Department of State's decisions were not arbitrary, capricious, an abuse of discretion, or otherwise unlawful, the Court cannot disturb those decisions; thus, Mr. Fox's complaint fails to state a claim upon which relief can be granted.

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss [Dkt. # 9]. A memorializing Order accompanies this Memorandum Opinion.

Date: November 17, 2010

_____/s/_____
ROSEMARY M. COLLYER
United States District Judge